Please the court, counsel. James Huffman for the Thornton Plaintiff's Appellants. This case is about a wrecking yard operator who had a wrecking yard in a specific location for about 10 years. He had received approval for the site. It was issued land-use permits to operate there. At some point a dispute developed about the use of the display area. The operator felt that state law allowed him to display certain numbers of vehicles in the area, and the city attempted to stop that. He filed suit in state court to seek a declaratory judgment, and after the suit was filed, an ordinance was adopted, which he later learned impacted his ability to operate. Since that ordinance was adopted, each and every year he's been delayed in opening and in a sense shut down every year for a certain period of time that varied from weeks to months. In the time prior to this happening, the city building inspector told him that the city was out to put him out of business. We could see no rational basis for the city's action against him. No other business was treated that way, and there seemed to be no explanation. His wife is an enrolled member of an Indian tribe, and he'd had racial insults against him in the community and told he shouldn't marry outside of his race. He felt that the lawsuit and the racial discrimination were the reasons that he was being discriminated against. His site is located in a heavy industrial zoned area, and according to the code, those areas are for the least desirable types of businesses, including things like, you know, paper mills, wrecking yards, manufacturing plants, things that produce unpleasant odors and have so forth. He could see no reason, and none has been offered by the city, why he was singled out. Other businesses, none of the other businesses have suffered this. Well, the trial judge told us he's the only business of his kind, so he's the only wrecking yard. He's not the only heavy industrial operator. But not all heavy industrial operators are the same thing, so are we really comparing like-to-like here? Well, the paper mill in town certainly produces much more pollution than is potentially issued by a wrecking yard. But they don't have to get the permit that we're talking about here, do we? Our problem, isn't your client's problem that they've got a state statute that sets the thing up as an annual renewable permit? Yes, and the problem, though, is we think we have a state statute right to continue the expectation to operate the business. There's no discretion in it renewing that certificate. Well, the state law appears to open the door to the city to adopt its own regulations. No, the regulations that they're allowed to adopt are the siting regulations. The land use regulations are set out in detail in 8.11.350, or let me see. The statute has very specific criteria, and they all have to do with siting locations. Once that land use is made, then the only thing they can review is whether he is continuing to comply with his land use siting permit. That's a fact, not a discretionary act. Is there anything wrong with an annual renewable permit to operate a wrecking yard? No, that's fine. Does he have any kind of a vested right to a renewal at the end of the year? If he follows the statute and complies with the rules, he has the right to renewal. And that's a question of fact, whether he complies with the rules. Well, does the statute say that? Yes. And the kind of rules that the city can adopt are defined by state statute. And they did adopt some, and what they did was they approved the size of the location, they approved the screening, they approved the landscaping, they approved the display area. That's approved. If he complies with that rule, then they have to issue the permit. That's not discretion. Discretion is when the decision maker can choose from two legally valid alternatives. When the facts are fixed, then his rights are determined to be, his right to renew is established. And so that question of fact has to be decided under due process rules. And they are not, because they suspend him before they make that decision. Whether the facts are valid or whether he's complied with the rules, that decision comes after the license expires. That decision should come before it expires. And they don't give him a chance to do that. How many years, there were several years in a row where there was a considerable delay between the time his license expired and the time he got a renewal. Yes. What, did he just operate a de facto undocumented wrecking yard during that period? Nope, the gate was locked. He couldn't go in. He couldn't go in. No business. He couldn't make any sales. He couldn't buy any scrap or take any wrecked cars. He was out of business during that time. And there's no justification for it. He testified in his affidavit that the records he knows, nobody goes through this. It's not necessary. They can do it in a way that doesn't shut him down. And Judge Jones' reasoning was that they were given, the Judge Jones ruled that they were given discretion to adopt the procedure any way they wanted. They don't have that discretion under the due process clause to take away rights before a hearing is granted. I submit that's not the kind of discretion any legislative body has to break, to violate the Constitution. The discretion is a question of making a legally valid choice, given a set of facts. The set of facts in this case are, he has, he's in compliance with his, with his permits. If he's in compliance, then they have to issue the license. The case that Judge Jones cited, Ledges Wedges, is the same thing. Once the fact is determined that this machine or device is a game of skill, then they have to give him the permit. And it's the same in this case. Once the decision is made that he has, he's in compliance with his permits, then they have to give him the license renewal. I submit that's a clear case of a due process violation if they set up a procedure that results in every single year a shutdown of the business. We also submit that there was evidence, that there was inferential evidence that there was a basis for discrimination on Jews. That's a statement from the Supreme Court, Gray v. Alexandria Women's Health Clinic, cited on page 22 of the brief. If there's no basis for targeting this business, and there's, there's no good explanation for it. He filed a lawsuit, and somebody in the city wants to put him out of business. With that, we think we can draw an inference that he's a subject of some kind of invidious discrimination, because they try to shut him down unreasonably. So we think that there was a question of fact on that for the, for a jury to decide, and it was not subject to determination by summary judgment. On a side note, and I don't want to spend much time on this, Judge Jones was misled by argument of counsel that those two individuals named were city counselors. They're clearly not, and there was no evidence that they were. And that was, was preserved because we put in evidence in the record that, that they were, they were not city counselors. And there was no affidavit by the defendant that, that they were city counselors. They were not. They were administrators. Brian Little is the city administrator, and the other... The depositions taken of these two guys? Yes. The two individuals named. Yeah. The counselors were properly dismissed, but the city administrators were not. That was just a mistake of fact that wasn't supported by the and they weren't. Well, were they granted immunity? There was a question of discretionary immunity, and again, he dismissed them because of discretionary immunity. I'm sorry. He dismissed them the first time for discretionary, and then I was chided because I kept them in without getting permission to keep them in, and I felt that, that the facts were sufficient to explain my, my keeping them in as the defendants. But he still, the judge still didn't pick up on the fact that they were not city counselors, even on the second go-around. So the, he ruled, though, that the state law claim of interference with contract was dismissed on the same discretionary argument. And they don't have discretion to issue permits. If the facts are fixed, they, they, they have to make a decision about facts. Once those facts are determined, and he's in compliance with the permits, then they have to issue. So that's not a discretionary act. The satisfactory. They might even decide, be able to decide that we don't want a wrecking yard in our town, and not sign any wrecking yards there. Well, the city could do that, or it could say, if it's an annual permit, they could give him notice that it would not be renewed because they want to turn it into a sports stadium or something. That would be very unreasonable. That would be like me saying, oh, we can take away U.S. Bank's right to have their, their tower down here on Burnside because we want to have Chinese restaurants down here, and we want to have Chinese restaurants there. That, that, that's not, that's not reasonable to anybody who's an investor. The Supreme Court will be talking to us about that fairly soon, but that's not today's case. Okay. And any more questions? I've covered my points. Well, I, I think we, you, you should save some time for rebuttal. Okay. We'll do that. Thank you. Good morning, Your Honors. If it please the Court, I'm Cecil Renish Smith. I'm representing the defendants. Can you keep your voice up a little bit, or else get closer to the... I, I will try. I, I have to admit I was talking a little too much and a little too loudly last night, and I'm paying for it this morning. So I will do my best. The plaintiff's arguments in this case have been somewhat of a moving target for the defendants from day one. And, and as we move through the district court, or first in the state court, then in the district court, and now here, it's still kind of difficult to pin down exactly what the concerns are. And so in our briefs, which I hope were comprehensive, we tried to address all of them and offer many alternatives. And my, I have some comments I would like to make, but I'm more interested, I think, in helping you understand what concerns you might have or answer any questions you might have. Let me start with the one that seems to me easy, although perhaps not of greatest importance, which is the immunity with regard to individuals Baker and Little. I take it they are not members of the city council. They are not members of the city council. So how can they be entitled to legislative immunity? Apparently no one knew until after everything was over that they were not councillors. Plaintiff's counsel states that they presented evidence that they weren't, but they never presented argument that they weren't. And we moved for summary judgment, the city moved for summary judgment, on the basis of legislative immunity for the individuals. And the plaintiff's response was not these particular individuals are not entitled to legislative immunity because of who they are. The response was legislative immunity doesn't count in this case, and it shouldn't be applied. We went through all the arguments on that. The court ruled in the individual's favor, saying, yes, they're out because of legislative immunity. Told plaintiff he could come back and amend his complaint and file against the city. The plaintiff came back, included the two, Warren Baker and Mr. Little, as individual defendants again, but did not cite any specific individual acts by them other than their participation in the enactment and application of the ordinance. So, again, it was unclear what he was claiming against them at this point. We moved to have them dismissed because the court had ordered them dismissed originally, but we also did make the argument that discretionary immunity applied to them as individuals applying an ordinance that had been adopted within the city's discretionary powers. So I understand they're covered by all the other arguments. On the narrow question of legislative immunity, you don't quarrel with the factual proposition they aren't and weren't city council members, although argue that the way the issue was brought to district court, somehow plaintiffs have waived the... Correct. That would be our position, that they've waived that opportunity to make that claim. Well, the city never asserted that this location was unlawful or anything, did they? No. What was the reason that the city offered for the delay in granting renewal or shutting him down every year while they mulled over the question whether to grant the renewal? Well, the city's position would be that they never shut him down. The delay was not the city's fault. If you look at the charts that were provided by a plaintiff, he can't even identify periods when the city gave its approval, it was then submitted to the state. We don't know what happened at the state. We don't know why the state might have delayed it. Was there a muted question of fact about who put the lock on the gate and for what reason and for how long? No, because that wasn't the issue. The issue before this court is whether the ordinance that was passed by the city and applied by the city was constitutional in terms of the process that was provided to the plaintiff for the renewal of his certificate. It was very clear that in order to get the annual renewal, a wrecking yard owner must get local government approval. The statute then goes on to provide that the local government may adopt such regulations as it believes necessary for it to grant its approval. Well, did they ever give him a list of the regulations that he was not in, that he was in noncompliance? Or anything? I mean, what was the reason for shutting him down? It was not an issue of noncompliance, and they did not shut him down. What happened was the way the ordinance worked is that in order to get city approval, local government approval, they passed a regulation that required the wrecking yard to be in compliance with land use regulations, and they also passed an ordinance that allowed for anyone, much like other land use ordinances, to be in compliance with land use regulations. And they also passed an ordinance that allowed for anyone who believed they might be affected by violations at the wrecking yard to appeal the city's provisional grant of the renewal. I'm looking at ORS 822.140. Is that the controlling statute that lists the things the city can require and make regulations about? Correct. In what respect was he in noncompliance with city regulations? He was. Each time, each year that we are talking about here, the eventual decision was that the approval should be granted, that he was in substantial compliance, and it was just a matter of the timing of once the city gave its approval, it went to the state, and then it went to the city. And there was some delay between, and plaintiff's own affidavit at some point says this, that it could take the state a while to get the renewal back to him. But the city can't control what the state is doing, but the city is allowed under the statute to adopt regulations to ensure the compliance, and that's what was going on. Now, in the past, there had been a number of times when the wrecking yard was not in compliance, but it is my understanding, reading in the record, there are a number of letters, annual letters, to the business owner explaining the process and saying no one has appealed, and therefore, my provisional grant is permanent, and here's your approval. You can send it to the state now. There were various staff reports discussing whether or not he was in compliance, and generally finding that he was in substantial compliance. But one of the problems that we have at this case is that the plaintiff has positioned this as a revocation or a suspension or a shutting down, and the city's position is his license was never revoked. His license was never suspended. And it must be especially frustrating for him to do that when you're not arguing at this point, and haven't, I guess, for the last several years, that there's a transgression, there's a violation, there's a reason not to approve. Oh, we're approving. It's just taking a little while to work through the system. In the end, that's not a very satisfying response. Well, and it's not taking that long to work through the city's system, and the city, the state statute gives the city the discretion to establish regulations to ensure compliance, and that's what the city has done. It has a process by which it ensures this compliance. In order to ensure each time that he's in compliance, it does need to go through this process. The city does go through it as quickly as possible. It then, once he gets his approval, he sends it into the state, and he himself has said it sometimes takes the state weeks to get him his certificate. The city cannot control that. And if he is concerned about this, maybe the state would be the proper defendant. No, but isn't that a question of fact? It shouldn't be reached now. He did not. He can't control it. I mean, his case is the city can't control it. He's been purposefully delaying it. The facts in the record show when the city approval was granted. What we don't have, and what was plaintiff's burden to prove, was when he submitted that to the Department of Motor Vehicles, and when he got his, we have when he finally got his certificate back from the Department of Motor Vehicles, but in a number of cases, he hasn't established when he submitted it. He did get those certificates to the DMV after getting them back from the city. And in the record are the letters from the city telling him, okay, here's your approval, and they have all been before the end of the year. They've all been within a short time after getting the request from the plaintiff. And so I would submit that even if there is a question of fact, he hasn't provided he hasn't provided any facts to dispute. Getting back to the to the very basic foundation, the suit to begin with your city's position is that he's got no constitutional claim because he doesn't have a protectable property. Correct. But it seems to me if you read this, as your opponent said, Mr. Hoffman, wedges and ledges case, the formulation there is what a protected interest is seems to fit this case. In the wedges ledges case, the issue was the permit for the gaming machine had to be granted once there was a determination made that it was a game of skill and not a game of chance. And so there were the is it a game of skill? Yes, it is. Therefore, you must have the permit. There was no discretion at all. In this case, the state statute has built into it a provision that allows the local government to adopt whatever regulations they want to essentially to fall under this section. It states local government, a city or county governing body shall grant approval of a record certificate or renewal when requested under this section. If the governing body then you go down to sub D says approves the location and determines that the location complies with any regulations adopted by a city or county. Sure. But if you've been at the location for years and years and years, I mean, it's a reasonable expectation that whether or not the location is proper is not a discretionary matter anymore. Not just the location, not just approving location. They must also determine that the location complies with any regulations adopted. The city could adopt new land use regulations or, you know, any number of land use regulations. But you see, I mean, none of those things seems to have changed here from year to year. You know, it's in the same place. The general conditions are the same. Zoning hasn't changed and all that. But it always takes a long, long time to get the permit approved. And in that context, if you read this, well, this is the way wages and ledgers formulates the test. The protected property interest is present where an individual has a reasonable expectation of entitlement deriving from, quote, existing rules or understanding that stem from an independent source, such as state law. And that seems to fit this case. Wedges and ledges also states. And I don't have the case in front of me, so I can't quote it for you. But it talks about that if there is if there is discretion in any decision making related to the purported property interest, that does not if the decision maker is not completely controlled, if there's some discretion, then there isn't a protected property interest. And our argument would be that the city has the discretion allowed for by the state statute to adopt land use regulations that may or may not apply to the wrecking yard and with which the wrecking yard may or may not be in compliance. And because of that, because the city has the discretion to adopt regulations that may result in the non renewal of the license, then there is no property interest in the license. Well, isn't there a due process or an equal privileges interest in not being jerked around by City Hall just because somebody there doesn't like you? Well, this brings me to an issue that I would like to point out to the Court is that the petitioner's affidavits about not being liked at City Hall, there's no admissible evidence in those. It's hearsay. It's speculation. It's conjecture. We moved at the district court to strike those affidavits. The district court did not specifically rule on the motion to strike, but in its opinion did state that there was no admissible evidence of this animosity. Why wasn't it? Did the district judge weigh the evidence to decide that it wasn't admissible, the affidavit? He did not rule on our motion to strike the affidavit. He didn't weigh the evidence. He just said it was inadmissible, that there was no admissible evidence to support plaintiff's arguments that there was animosity or an intent or a bad motive. I don't know whether St. Helens is a particularly fertile source of this kind of litigation, but it seems like they must have a lot of money in the city budget to hire lawyers because we get a lot of these cases. I live in a town that's almost that small. We're sisters, and we don't have any litigation up there. Nobody sues anybody. They can't afford it. Well, I guess I would not be having a job there then. You need a second lawyer to move to town. There we go. Here, sisters is nice. I'm not entirely sure. Well, I don't know why there isn't a fact question lurking in here somewhere. I don't know. Maybe the plaintiff got outlawyered somewhere along the line, but it looks to me like there is a fact question in here about why did the city jerk him around? I mean, why were these papers not moved faster? And if it's the state that's jerking him around, well, then he ought to maybe sue the state. Well, I would submit that it was plaintiff's burden to come forward with the disputable facts, admissible evidence that creates a genuine dispute of facts, and plaintiff did not do that. Well, maybe on rebuttal he can tell us what the disputable question fact is. There were a few other issues raised. I'm not sure if the Court has any questions. What is the claim, is it me to say, preclusion argument? What is it that you argue is precluded? Yeah. It's actually an issue preclusion argument, which is significantly different, and that's one of the plaintiff's brief. He argues claim preclusion, argues against claim preclusion, and claim preclusion isn't there. It's issue preclusion. And what the issue is is that plaintiff in the state court, which he took all the way through the appeals process, had claimed that the city had absolutely no right to regulate his business at all because it was preempted by state law, that the DMV regulations about wrecking yards preempted any attempt by the city to regulate his business. And that claim, which he argued all the way through the appellate process, we've included the appellate briefing for the court's benefit to see how those arguments were framed, is essentially the same argument that he had made to the district court originally, that the city can't regulate him. And we moved to have that issue precluded because that had been fully litigated and found against him at the state court level. And that issue was the issue of complete preemption. Yes. But that's not the same issue, is it? Even though that issue we'll assume is precluded, even if we assume that it is, it doesn't preclude his argument that he has a constitutionally protected interest, does it? It's a separate issue. The issue that was precluded was whether or not the city could not adopt any regulations whatsoever because the state occupied the field. His attack on the ordinance, as I understood it, the state court has adjudicated the issue of whether the city has the power to enact its own regulatory ordinance. Correct. Correct. And that the state statute allows for that to happen. Thank you very much. It clearly does. It's so many words. It says they can regulate. I think I can answer the question about the question of fact. On page 147 of the excerpt is Mr. Thornton's affidavit setting out his summary of the dates that he was issued permits from the city. And if you look at page 98 of the excerpt, there's a there's a signed and dated by the mayor permission to issue his permit of March 8th of the year 2000. He I think he incorrectly put March 28th in the affidavit. It was actually March 8th, according to the 98, which is the actual permit. We know there were some years where there were more substantive issues. And then there's a series of years where it misses by a few days each year. And someplace I saw a chart. Maybe it was the page you just mentioned. The 99 was the they were battling in court that year and they wouldn't let him open it all till April. And that's the year he filed the suit for declaratory judgment. And the declaratory judgment sought to declare that the state records statute, which is 811.135. Right. The one right before in the book before 140, which is the one we've argued about. And under that statute, it sets out specific criminal statute and it sets out particular requirements of the wrecking yard. So many feet of a screen fence. So and you can have not have more than six or eight cars in this play area, which is an area outside the fence. And the position that the plaintiff took there was that if the state grants that right, you have to have the right to park the number of cars there. And it was his position in that lawsuit that the city couldn't adopt the land use ordinance that conflicted with that state law. The judge dismissed that case without deciding that question. He talked about it in oral argument on a motion for summary judgment. But the defendant's city moved to dismiss the suit under Rule 21 for failure to state a claim. And as part of the litigation, this is set out in the brief. Part of litigation was the argument that the issue became moot because Mr. Thornton was told during the lawsuit that he could get a permit to park there. So he got a permit from Skip Baker and was given the permit, allowed him to park in the display area. So it mooted the dispute because it didn't need to be decided. Judge Grove dismissed the suit without rendering a written decision. He didn't say why he dismissed it. And it was a declaratory judgment suit. The court did not declare the law. There was no judgment declaring what the law was. So at this point in time, there's no judgment issued from St. Helens Circuit Court that decides whether the state law preempts the city from. Well, there is a judgment on the merits. No, the judgment was not. The judgment says he didn't state a claim for relief. That's a judgment on the merits, isn't it?  So he didn't plead sufficient facts to have a decision. He didn't get a decision. He just said, you know, it's it's it's a judgment that ends the case. It ended that case. But it doesn't it's not precedent to say that that there's claim that there's that the state laws preempts or doesn't preempt. You don't have to be precedent in the sense of, you know, we use the word precedent just has to be that he raised the issue before. And the issue has been decided. Yes. So you need the only issue. The only issue is it doesn't need to be decided because he has a permit now. So it's not a dispute. We'll say a dismissal for failure to state a claim and dismissal because the case is moot are are different animals. No, no. Yeah. Declaratory judgment. You have to have a dispute. If the dispute isn't a valid dispute anymore, then that's moot. And you have no right to declare judgment. Ordinarily, that doesn't produce the dismissal for failure to state a claim. Failure to state a claim means there's not a claim. No debate. To be able to make a claim for declaratory judgment, you have to have a justiciable controversy. If there's no controversy because you get to do what you want to do, the court shouldn't render decisions there. So I think that the cause of action for declaratory judgment is there has to be a justiciable controversy. And so I'm moving this, I think, means that you don't have a claim. First, I don't know what we're arguing about this. Are you claiming that Judge Jones erred in determining the claim issue preclusion? I think it was I think I think it was a mistake, but I don't think it's material. It doesn't make any difference. It doesn't make any difference. I don't think we need to even have that decision on that question. But I think that that by council statement, she's indicated to you that I think there's a question of fact on the question of whether or not he's been delayed. She's trying to blame it on the state. Let me put it this way. If you ever if your client ever claimed that local regulation was completely granted by state law, that's not that's not a claim he's making in this case today. He doesn't make that claim today. It was part of it. It was just part of the argument in the brief, but I don't think it's material. Right. Thank you. Thank both of you for your arguments. That case is submitted. We will take a short recess before we return for the last two cases on today's calendar. Thank you.
judges: Goodwin, Tashima, Clifton